UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TIFFANY HOLMBERG,

                      Plaintiff,

v.                                                    6:15-CV-1022
                                                    (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ       PETER ANTONOWICZ, ESQ.
  Counsel for Plaintiff
148 West Dominick St.
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.            HEETANO SHAMSOONDAR,
OFFICE OF REG'L GEN. COUNSEL – REGION II  ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  (Dkt. No. 18.)  This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Tiffany Holmberg ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 13, 17.) For the reasons set forth below, it is recommended that Plaintiff's motion denied and Defendant's motion be granted.

I. RELEVANT BACKGROUND

    A. Factual Background

Plaintiff was born on August 27, 1984. (T. 176.) She completed high school. (T. 194.) Generally, Plaintiff's alleged disability consists of herniated discs, right leg numbness, and depression. (T. 193.) Her alleged disability onset date is June 7, 2010. (T. 176.) Her date last insured is June 30, 2014. (T. 94.) She previously worked in manufacturing and as a driver. (T. 194.)

    B. Procedural History

On August 22, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 94.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 5, 2014, Plaintiff appeared before the ALJ, David J. Begley. (T. 56-93.) On May 12, 2014, ALJ Begley issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 13-36.) On July 20, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-3.) Thereafter, Plaintiff timely sought judicial review in this Court.

    C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 18-32.) First, the ALJ found that Plaintiff met the insured status

2

requirements through June 30, 2014 and Plaintiff had not engaged in substantial gainful activity since June 7, 2010. (T. 18.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, obesity, and major depressive disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 19-20.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional limitations. (T. 20.)[1] The ALJ determined Plaintiff could not climb ladders, ropes or scaffolds; could occasionally climb ramps/stairs, balance, stoop, kneel, crouch or crawl; must avoid slippery and uneven surfaces, hazardous machinery, and unprotected heights; was limited to simple, routine, and repetitive tasks; and was limited to jobs that required only occasional interaction with coworkers and supervisors. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 31-32.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in his credibility analysis. (Dkt. No. 13 at 9-13 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ erred in his

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

evaluation of the opinion evidence under 20 C.F.R. § 404.1527. (*Id.* at 13-15.) Third, and lastly, Plaintiff argues the Commissioner violated the Regulations in hiring a consultative examiner that was prejudicial to Plaintiff's claim. (*Id.* at 15-18.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly evaluated Plaintiff's credibility. (Dkt. No. 17 at 5-11 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly evaluated the medical opinion evidence. (*Id.* at 11-15.) Third, and lastly, Defendant argues the Commissioner properly obtained the consultative examinations. (*Id.* at 15-17.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation

process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

For ease of analysis, Plaintiff's arguments will be addressed out of order.

### A. Evaluation of Medical Opinion Evidence in the Record

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. § 404.1527(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's

consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

First, Plaintiff essentially argues that the ALJ erred in affording great weight to the opinion of consultative examiner, Pamela Tabb, M.D., because she examined Plaintiff only once, is a pediatrician, and her examination was conducted early in the application process. (Dkt. No. 13 at 14-15 [Pl.'s Mem. of Law].) Second, Plaintiff makes the argument that substantial evidence supported the opinion of Plaintiff's treating psychologist, David Stang, Psy. D. (*Id.* at 15.)

The ALJ did not err in affording great weight to the opinions of the consultative examiners. It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e). "[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010).

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing

7

*Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin*, No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016).

Although Dr. Tabb is a licensed pediatrician and only examined Plaintiff one time early in the application process, the ALJ properly concluded that Dr. Tabb's opinion was consistent with the longitudinal medical record which "document[ed] only mild or minimal degeneration in the lumbar spine." (T. 28.) Dr. Tabb opined, based on her examination of Plaintiff, that she had mild restrictions for bending, lifting, pushing, pulling, and carrying. (T. 325.)

Dr. Tabb's opinion was consistent with other opinion evidence in the record. For example, on February 3, 2011, orthopedist Thomas Haher, M.D., reviewed Plaintiff's spinal MRI and opined that the results were "essentially normal." (T. 371.) He observed that Plaintiff appeared to be in moderate pain, but had no apparent pain or difficulty with walking, her station was normal, there was no tenderness or spasm in her lumbar spine, her range of motion was normal in her lumbar spine, and she had a negative straight leg test. (T. 371-372.) Dr. Haher also observed that Plaintiff had full strength and normal sensory in her lower extremities. (T. 372.)

Dr. Tabb's opinion was also consistent with her physical examination. On examination Dr. Tabb observed that Plaintiff was in no acute distress, had a normal gait, could walk on heels and toes, could fully squat, had a normal stance, did not use assistive devices, needed no help changing for the examination, was able to get on and off the exam table and was able to rise from a chair. (T. 323.) An examination of

Plaintiff's spine revealed full range of motion in her cervical spine, limited range of motion in the lumbar spine, negative straight leg raises bilaterally, full range of motion in the elbows/forearms/wrists, full range of motion in the left shoulder, reduced range of motion in the right shoulder, and full range of motion in the lower extremities. (T. 324.) The ALJ also acknowledged that Dr. Tabb is a pediatrician; however, specialty is one factor to be considered in weighing the opinion evidence in the record. 20 C.F.R. § 404.1527(c)(5).

Plaintiff appears to argue that the results of the functional capacity evaluation ("FCE") would support greater limitations than the ALJ accounted for in his RFC determination; however, Plaintiff provided no further support for her argument. (Dkt. No. 13 at 15 [Pl.'s Mem. of Law].) An FCE was conducted on March 4, 2014, by Kenneth T. Carter, Physical Therapist. (T. 480-498.) The ALJ discussed the FCE results in his decision. (T. 27, 29.) The ALJ noted that Mr. Carter scored the validity of the test "borderline;" however, he concluded Plaintiff was limited to the sedentary exertional level of work. (T. 27, 480, 498.)

The ALJ properly afforded Mr. Carter's assessment "little weight," because Mr. Carter was not an acceptable medical source under 20 C.F.R. § 404.1513(a), he had no treating relationship with Plaintiff, the FCE findings were inconsistent with the overall record, including notations made during the FCE which questioned the validity of Plaintiff's efforts, and the report was largely based upon Plaintiff's subjective reporting. (T. 29); see *Russitano v. Colvin*, No. 6:14-CV-403, 2015 WL 4496383, at *6 (N.D.N.Y. July 23, 2015) (ALJ properly accorded little weight to FCE, while according great weight to consultative examiner's opinion, which constituted substantial evidence in support of

9

the ALJ's RFC determination); *see Roma v. Astrue*, 468 F.App'x 16, 19 (2d Cir. 2012) (an ALJ may provide less weight to an opinion that was based largely upon the subjective statements of a plaintiff, who the ALJ had reasonably be less than fully credible).

Plaintiff appears to argue that the ALJ erred in affording "great weight" to consultative examiner, Jeanne Shapiro, Ph.D. over treating psychologist, David Stang, Psy.D. (Dkt. No. 13 at 15 [Pl.'s Mem. of Law].) Plaintiff simply states "substantial evidence supports the opinion of plaintiff's treating psychologist, therefore warranting controlling weight be accorded." (*Id.* at 15.)

The ALJ properly evaluated the mental health medical opinion evidence and his mental RFC was supported by substantial evidence. Dr. Shapiro conducted a psychiatric examination on November 28, 2012. (T. 317-321.) On examination Plaintiff was cooperative, she was appropriately dressed, her eye contact was appropriate, her speech was intelligible and fluent, and her voice was clear and her language was adequate. (T. 318.) Dr. Shapiro observed that Plaintiff's thought process was coherent and goal directed, her affect was dysphoric, her mood was dysthymic, her sensorium was clear, and she was orientated. (T. 319.) Dr. Shapiro noted that Plaintiff's attention and concentration were grossly intact, her memory skills were grossly intact, her cognitive functioning appeared to be in the average range, and her insight and judgment were good. (*Id.*)

In a medical source statement, Dr. Shapiro opined that Plaintiff was capable of following and understanding simple instructions and directions, performing simple and complex tasks independently, but "may not always feel motivated to do so." (T. 320.)

She opined Plaintiff was capable of maintaining attention and concentration; and able to maintain a regular schedule, "but also may not feel motivated at times to go places." (*Id.*)  Dr. Shapiro opined Plaintiff was capable of learning new tasks and making appropriate decisions; however, Plaintiff does not always relate adequately with others due to irritation and does not always appropriately deal with stress.  (*Id.*)

    Dr. Stang began treating Plaintiff in July of 2013.  (T. 347.)  On February 21, 2014 he completed a medical source statement.  (T. 446-447.)  Therein he opined that Plaintiff had "none/mild" limitations in her ability to: follow rules; relate to acquaintances and familiar people; maintain personal appearance; and demonstrate reliability.  (T. 446.)  He opined that Plaintiff had "minimal" limitations in her ability to: use judgment; relate to authority figures; and understand, remember, and carry out simple instructions.  (*Id.*)[2]  Dr. Stang opined that Plaintiff had "marked" limitations in her ability to: deal with the public; deal with stress; function independently; maintain attention and concentration; understand, remember, and carry out complex instructions; understand, remember, and carry out detailed instructions; and relate predictably in social situations.  (*Id.*)[3]  He opined Plaintiff had "extreme" limitations in her ability to behave in an emotionally stable manner.  (*Id.*)[4]  Dr. Stang opined that Plaintiff would be "off task" at least 50% of the time in an 8-hour block of time.  (T. 447.)  Dr. Stang further indicated that Plaintiff would likely be absent more than four days per month.  (*Id.*)

---

[2]    "Minimal" is defined as "individual retains the ability to sustain this activity consistently and without interruption due to symptoms throughout an 8 hours period of time despite the presence of limitations."  (T. 446.)

[3]    "Marked" is defined as "effectively precluded from performing the activity consistently and without interruption due to symptoms throughout an 8 hour period of time on a daily basis."  (T. 446.)

[4]    "Extreme" is defined as "no ability to function in this area for any appreciable period of time during an 8 hour period of time on a daily basis."  (T. 446.)

The ALJ afforded Dr. Stang's opinion "limited weight." (T. 29.) The ALJ properly reasoned that Dr. Stang's assessment was not consistent with the overall record and his own treatment notations. (*Id.*) Overall, the medical record did not contain complaints of mental health limitations. On December 8, 2010, and again on February 16, 2011, Plaintiff denied mental problems and depression. (T. 288, 299.) On August 24, 2010, September 23, 2010, October 26, 2010 and January 10, 2011, Plaintiff appeared alert, cooperative, with a normal mood and affect, and with a normal attention span and concentration. (T. 297, 304, 308, 312.) On January 25, 2011, Plaintiff denied difficulty with concentration or memory loss. (T. 292.) A mental examination performed on August 14, 2013 indicated Plaintiff was pleasant, had a euthymic mood, conversed clearly and had a normal thought content. (T. 337.) Therefore, the ALJ properly concluded that the overall medical record did not support Dr. Stang's limitations.

In addition, Dr. Stang's own objective observations of Plaintiff did not support the limitations he imposed. In mental status examination, Dr. Stang indicated that Plaintiff was neat and cooperative; her motor activity was normal; her speech was normal; her affect was appropriate; her mood was euthymic and depressed; her thought process was goal directed; she had no perceptual abnormalities; she had no thought content abnormalities; she was fully orientated; her concentration was intact; her attention was alert; her memory was intact; and her judgment and insight were intact. (T. 350-351.)

Therefore, the ALJ properly afforded Dr. Stang's medical source opinion limited weight because his opinion was inconsistent with the overall medical evidence and his own medical observations. The ALJ's mental RFC determination was supported by Dr. Shapiro's medical source opinion that Plaintiff was essentially capable of performing

simple, routine, repetitive work with occasional interaction with coworkers and supervisors.

Even assuming substantial evidence supported Plaintiff's position, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991). Plaintiff failed to show that no reasonable fact finder could have reached the ALJ's conclusion because Plaintiff failed to cite to any evidence in the record to support her position that the FCE and Dr. Stang's medical source statement were supported by substantial evidence. Further, for the reasons stated herein and further in Defendant's brief, the ALJ's RFC determination was supported by substantial evidence in the record.

### B. Credibility Analysis

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23,

27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. § 404.1529; SSR 96–7p. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96–7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); SSR 96-7p.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, Plaintiff's

14

statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (T. 22.)

Plaintiff argues the ALJ erred in his credibility analysis and determination because evidence in the record, specifically the FCE, supported Plaintiff's credibility and the ALJ selectively recounted the evidence in the record. (Dkt. No. 13 at 11-13 [Pl.'s Mem. of Law].) To the extent that Plaintiff's argument as to the ALJ's credibility determination is premised on his failure to properly weigh the opinion evidence in the record, that argument lacks merit, because, as discussed in Part IV.A., the ALJ properly evaluated the medical opinions in the record and his RFC determination was supported by substantial evidence.

Plaintiff also argues that the ALJ's credibility determination was based on a selective reading of the evidence. (Dkt. No. 13 at 11-13 [Pl.'s Mem. of Law].) In support of her argument Plaintiff stated that the ALJ referred to an MRI report in Exhibit 9F on page 6 that is not present in that Exhibit. (*Id.* at 12.) Although the ALJ erroneously cited an Exhibit that did not contain Plaintiff's MRI, this does not equate to a "selective reading" of the record. Here, the ALJ's error was harmless, because elsewhere in his decision the ALJ properly cited the record containing Plaintiff's MRIs and properly summarized the findings of the MRIs.

On July 19, 2010 Plaintiff had an MRI, which was reviewed by Dr. Haher on February 3, 2011, but a report was not available. (T. 370-372.) Dr. Haher stated the results of the July MRI were "essentially normal." (T. 371.) Plaintiff had another MRI on January 15, 2014, which indicated a small disc herniation. (T. 435.) In his decision the ALJ referred to these MRIs and their findings. (T. 24, 26, 30.) Therefore, although the

15

ALJ cited to an Exhibit which did not contain the MRI report, his properly identified Plaintiff's two MRI reports, and their results, elsewhere in his decision. Further, any error was harmless because the ALJ's overall credibility determination was proper and supported by substantial evidence.

In making his credibility determination, the ALJ relied on the objective medical evidence in the record, Plaintiff's testimony, Plaintiff's activities of daily living, and treatment Plaintiff received in accordance with 20 C.F.R. § 404.1529(c)(3)(i)-(vii). (T. 22-31.) The ALJ provided a detailed and thorough review of the medical evidence in the record which provided substantial evidence to support his determination that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her statements were not entirely credible. (T. 22.) Therefore, for the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's credibility determination be upheld.

### C. Consultative Examiners

Plaintiff argues the Commissioner committed legal error because she failed to follow the Regulations when she hired a consultative examiner from an outside source without first seeking the consultative exam from Plaintiff's treating provider. (Dkt. No. 13 at 15-18 [Pl.'s Mem. of Law].)

During the course of an application for Social Security Disability benefits the Commissioner may purchase a consultative examination. 20 C.F.R. § 404.1519a. The purchase of a consultative exam is done at the discretion of the Commissioner. *Id.* at § 404.1519a(a) ("If we cannot get the information we need from your medical sources, we *may* decide to purchase a consultative examination.") (emphasis added). Generally, an

16

exam is ordered if information cannot be obtained from treating medical sources, to help the Commissioner resolve inconsistencies in the record, or to fill in any gaps in the record. *Id.* at § 404.1519a(b)(1)-(4). A consultative examination can only be performed by a "qualified medical source" who is licensed in the State and has "the training and experience to perform the type of examination or test [the Commissioner] will request." *Id.* at 404.1519g.

The Regulation at 20 C.F.R. § 404.1519h states:

[w]hen in our judgment [plaintiff's] treating source is qualified, equipped, and willing to perform the additional examination or tests for the fee schedule payment, and generally furnishes complete and timely reports, [plaintiff's] treating source will be the preferred source to do the purchased examination. Even if only a supplemental test is required, [plaintiff's] treating source is ordinarily the preferred source.

The Regulations state that a treating source will not be used in such cases where the treating source "prefers not to perform such examinations or does not have the equipment," there are conflicts or inconsistencies the treating source cannot resolve, plaintiff prefers to use a different source, or the treating source may not be a "productive source." 20 C.F.R. § 404.1519i. The Regulations also state that "[t]he medical sources who perform consultative examinations will have a good understanding of [the Social Security Administration's] disability programs and their evidentiary requirements." *Id.* at 404.1519n.

First, the Commissioner has discretion to order a consultative examination to further develop the evidentiary record. *Cox v. Astrue*, 993 F. Supp. 2d 169, 177 (N.D.N.Y. 2012); *see Serianni v. Astrue,* No. 6:07–CV–250, 2010 WL 786305, *5 (N.D.N.Y. Mar. 1, 2010); 20 C.F.R. § 404.1519a.

Second, the Commissioner has discretion in seeking a consultative examination from a plaintiff's treating source; "[w]hen *in our judgment* your treating source is qualified, equipped, and willing to perform the additional examination or tests for the fee schedule payment, and generally furnishes complete and timely reports, your treating source will be the preferred source to do the purchased examination." 20 C.F.R. § 404.1519a(a).

Here, neither the Commissioner, not the ALJ, abused their discretion in not ordering a consultative examination from Plaintiff's treating provider. Of note, Plaintiff does not argue specifically who should have been contacted to provide the consultative examination. At the hearing Plaintiff's counsel stated that "none of the physicians were willing to fill out a medical source statement." (T. 59.) Counsel requested additional time to have "Dr. Bush" review the FCE. (*Id.*) Plaintiff's counsel did not object to the opinion of the consultative examiner, Dr. Tabb; however, Plaintiff did voice concern that Dr. Tabb was not an orthopedist. (T. 92.) In response, the ALJ stated that he would hold the record open for additional records regarding the FCE; however nothing additional from Dr. Bush was received. (*Id.*) Plaintiff's record was complete and none of the treating physicians, besides Dr. Stang, were willing to complete a medical source statement.

Therefore, the Commissioner's failure to seek a consultative examination from Plaintiff's treating source, did not constitute legal error because under the Regulations the Commissioner was not obligated to order a consultative examiner, nor was she obligated to order a consultative examination from a treating source. *Barber v. Comm'r of Soc. Sec.,* No. 15-CV-0338, 2016 WL 4411337, at *6 (N.D.N.Y. July 22, 2016), *report*

*and recommendation adopted sub nom. Barber v. Colvin*, No. 15-CV-0338, 2016 WL 4402033 (N.D.N.Y. Aug. 18, 2016).

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 21, 2016

William B. Mitchell Carter
U.S. Magistrate Judge